## SUPREME COURT.

.ADDISON W. SEYMOUR, respondent agt. ULYSSES H. COOK, appellant.

*Liability of Innkeeper.*—A guest, with his team of two horses and wagon, stopped at a village tavern, and after having had his horses put in the barn and fed, and having himself taken dinner, and paid his bill for the whole, requested the innkeeper to get his horses; the latter told him to go on and be hitching up, and he (the innkeeper) would be out in a few minutes; the guest went to the barn, put the head stalls on the horses, and was getting them out; and while doing so the innkeeper arrived there; but before the innkeeper arrived at the barn two men rode up in a buggy, unhitched their stallion horse and placed him in a stall between those occupied by the guest's horses and the outer door.

The guest led one of his horses out of the door for the purpose of hitching on to the wagon; and the other horse followed on, as he was accustomed to do, and when passing the stall where the stallion stood, received a kick from him which broke its leg and rendered it entirely worthless, so that it became necessary to kill it:

*Held,* that the innkeeper was liable. The relation of landlord and guest had not terminated; the horses were still on his premises and in his barn; the guest was only doing for the innkeeper, and with his assent, what it was his duty to have done.

*Syracuse General Term, January,* 1868.

*Before* MORGAN, BACON *and* FOSTER, *Justices.*

APPEAL from a judgment in favor of the plaintiff, upon a verdict at the Onondaga circuit, held before the Hon. L. R. MORGAN, Justice, in June, 1867.

The action was brought against the defendant as an inn-keeper, to recover the value of a horse which was injured while in his stable. The jury returned a verdict for the plaintiff for $140, being its value, as proved; upon which judgment was rendered, and the defendant appealed to this court. The material facts are stated in the opinion.

JOHN MOLLOY, *for appellant.*

I. The relation of innkeeper and guest had terminated before the injury was done. (*Ingalsbee* agt. *Wood,* 33 *N. Y.* 577.)

(a.) The servant had paid his bill and had taken possession of the team.

(b.) He did not recognize the right of the defendant to interfere with or control the team. He declined to accede to the defendant's request that he should wait until the cause of the danger could be removed.

II. Though the liability of the innkeeper with respect to a guest is that of an insurer, yet, if the guest himself takes the responsibility of caring for and controlling the property,.and declines to accede to the reasonable request of the landlord with respect to its protection, he can no longer claim that the inkeeper is an insurer, and he must bear his own loss, it being the result of his own negligence. (*Wilson* agt. *Halpin,* 30 *How. Pr. R.* 124; *Saunders* agt. *Spencer, Dyer,* 266, *b; Cayles' Case,* 8 *Coke,* 33, *a; Burgess* agt. *Clement,* 4 *M. & S.* 306; *Richmond* agt. *Smith,* 8 *Barn. & Cress.* 9; *Van Wyck* agt. *Howard,* 12 *How. Pr. R.* 151; *Hulett* agt. *Smith,* 33 *N. Y. R.* 571.)

The request to cnarge, at folio 86 of the case, was intended to and substantially does present the question as to whether the defendant, under the circumstances of this case, was an insurer.

III. The defendant can in no case be charged in damage, if the loss happen through the neglect.of the guest, or from his refusal to obey the directions of the inkeeper. (*Hulett* agt. *Swift,* 33 *N. Y. R.* 571; *Purvis* agt. *Coleman,* 21 *N. Y. R.* 111, 117, *and cases cited.*)

It is not necessary that the plaintiff should have been guilty of gross negligence. It is sufficient that he did not wait when apprised of the danger.

It is impossible to conceal the fact that the defendant in this case was greatly and and unjustly prejudiced by the charge of the judge to the jury; and upon the whole oase, the defendant ought to have a new trial.

FULLER & BARTLETT, *for respondent.*

*By the court,* FOSTER, J.   It appeared from the evidence

that the horse in question was owned by the plaintiff. That on the 31st of October, 1866, the brother of the plaintiff, and who was in his employ, drove his team, of which this animal was one, to the village of Geddes, and stopped at the tavern kept by the defendant. He had his horses put into the stable and fed, and had his own dinner; for all which he paid the defendant. When he was ready to leave, he asked the defendant to get the horses, who told him to go on and be hitching up, and that he would be out in a few minutes. He went to the barn, put the head stalls on the horses, and was getting them out, and while doing so the defendant arrived there. Before the defendant reached the barn, two men, named McGee and McKay, rode up in a buggy, unhitched their horse, which was a stallion, and placed him in a stall between those occupied by the plaintiff's horses and the outer door.

The driver of the plaintiff's team led one of his horses out of the door, for the purpose of hitching on to the wagon; and the other, being the one in question, followed on, as it was accustomed to do, and, when passing the stall where the stallion stood, received a kick from him which broke its leg and rendered it entirely worthless, so that it became necessary to kill it.

The defendant did not deny that he received the horses into his stable in his character of an innkeeper; but it is insisted in his behalf that, before the injury happened, the servant of the plaintiff had taken the horses into his own possession and charge, and that the relation of landlord and guest had terminated.

Upon this question. there is no evidence to contradict what is hereinbefore stated, though the testimony of the defendant to some extent differs from that of the driver's; but his own statement is that he started twice to go with the driver to get the horses, but was interrupted; that the driver then said, "I can get my own horses, as you are busy;" to which

the defendant replied, "I will be there as soon as I can get there;" and that he did arrive before the injury happened.

There is nothing in this to show that the liability of the defendant as an innkeeper was at an end. The horses were still on his premises and in his barn. The driver was only doing for the landlord, and with his assent, what it was his duty to have done. And unless there was some improper conduct on the part of the driver, which caused injury, the defendant is liable to the same extent as though he, instead of the driver, had been handling them at the time.

It is also claimed that the injury was caused by the negligence of the driver, in not keeping the horse away from the stall in which the stallion was placed; and the evidence of one of the witnesses, who came there with him and placed him in the stall, was that the driver was notified that it was a stallion, and that he should be careful.

It is not necessary to detail the evidence on this point; it is enough to say that to some extent there was a conflict in the testimony; and in my opinion the jury were warranted in finding as they did.

The negligence consisted in putting a stallion into an open stall, in a tavern barn, near the outer door, so that those passing in or out were obliged to pass near him.

The charge of the judge, to which there was no exception, fairly and properly presented all the questions in the case to the jury.

Exception was taken on the trial to the refusal of the judge to charge upon two propositions submitted by the defendant's counsel; but no point has been made upon them before me; and besides, they were embraced in the charge which had been made, and the refusal to charge as requested was placed upon that ground.

There was no error, in my opinion, either in the charge of the court or in the verdict of the jury.

The judgment should be affirmed.