The jury found that the trunk was not delivered to, or accepted by the plaintiff on the arrival of the train at Palmyra. It is claimed however that the evidence conclusively established a delivery by the company, and a termination of its responsibility. It is not claimed that the trunk was taken by the plaintiff from the station. On the contrary it is conceded that it remained there for about two weeks, and was then delivered by the baggage-master to a stranger, who falsely claimed that he was authorized by the plaintiff to receive it. The contention of the defendant is that it was left by the plaintiff in the possession of the baggage-master for her convenience, while on a visit to friends in the vicinity, after it had been delivered to her by the company, and that the baggage-master in consenting to keep the trunk during her absence, acted not only without authority, but contrary to the instructions of the defendant, and in what he subsequently did must be regarded as her agent, and not the defendant's.
We think the court would not have been justified in deciding the question of delivery as a question of law, *Page 384 
and withdrawing it from the jury. The defendant received the trunk at Rochester, under the contract to carry the plaintiff and her baggage to Palmyra. The burden of showing a delivery of the trunk was upon the defendant. It was not sufficient to discharge the defendant from responsibility that it carried the trunk to Palmyra. The general rule is that a carrier must deliver the property carried, in order to terminate his responsibility. If a passenger does not call for his baggage on arrival, the company cannot leave it uncared for, or abandon it. Its strict responsibility as a carrier will cease after a reasonable time has elapsed, to enable the owner to claim it, and a modified liability, like that of warehouseman will supervene. (Burnell
v. N.Y.C.R.R. Co., 45 N.Y., 184; Fairfax v. N.Y.C. andH.R.R.R. Co., 67 id., 11.) The neglect of the owner to call for the baggage within a reasonable time, changes the character of the liability, but does not terminate it.
The evidence of what took place on the arrival of the plaintiff at Palmyra, is conflicting. But taking the plaintiff's version of the transaction to be true, we cannot say that there was a delivery and acceptance of the trunk. It is clear that the plaintiff from the outset, intended to leave the trunk at the station, while visiting her relatives before continuing her journey. The checks for the three pieces of baggage, were handed to the driver of the omnibus in the presence of the baggage-master, for the purpose of enabling him to select the valise, which she desired to take with her, and this purpose was, as the jury from the evidence was authorized to find, known to the baggage-master. They were handed by the driver to the baggage-master, who selected the valise, and brought it to the plaintiff, and a colloquy followed between the plaintiff and her sister, and the baggage-master, in respect to the trunks remaining there for a week or two, and the baggageman informed them in substance that they could be left "by giving him the checks." He assured them that the trunks would be perfectly safe, *Page 385 
"just as safe without the checks as with them." The baggage-master had retained the checks from the time he received them from the driver of the omnibus. Soon after this conversation, the plaintiff and her sister left the station, and when about two weeks afterwards they called for their trunks, the plaintiff's trunk could not be found.
It was for the jury to determine upon this evidence whether there was a delivery of the trunk by the defendant on her arrival at Palmyra. The baggage-master states that he informed the plaintiff that he had no authority to permit trunks to remain at the depot, and directed her attention to a printed regulation to that effect, posted upon the building. It is sufficient to say that the baggage-master in respect to this evidence is contradicted by the plaintiff, and other witnesses, and the question of credibility was for the jury. It is quite evident that the plaintiff did not understand that she was making a new contract with the baggage-master for the custody of the trunk, and it was for the jury to say, whether anything occurred to terminate the legal custody of the property after it was received by the defendant at Rochester, before the mis-delivery, which has given occasion for this controversy. The liability of the defendant is not disputed, if at the time of the mis-delivery, the trunk was in its custody. (Ostrander v. Brown, 15 J.R., 39; Powell v. Myers, 26 Wend., 591; Hawkins v. Hoffman, 6 Hill, 586; Burnell v. N.Y.C.R.R. Co., 45 N.Y., 189.)
This case came before the court on a previous occasion, on an appeal from a judgment rendered upon a former verdict. (57 N.Y., 552.) The facts now appearing, differ in some material respects from the facts then disclosed, and the court reversed the former judgment in part at least upon an exception to the charge upon a point which does not now arise.
There are several exceptions to the charge of the judge on this trial, but they do not call for special comment.
The judgment should he affirmed.
All concur.
Judgment affirmed. *Page 386